**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0446-19T2

IN THE MATTER OF OCEAN
COUNTY COLLEGE,

     Petitioner-Appellant,

v.

OCEAN COUNTY COLLEGE
FACULTY ASSOCIATION,

     Respondent-Respondent.

_____

Submitted September 16, 2020 – Decided October 13, 2020

Before Judges Alvarez and Mitterhoff.

On appeal from the New Jersey Public Employment Relations Commission, P.E.R.C. No. SN-2019-034.

Cleary Giacobbe Alfieri Jacobs, LLC, attorneys for appellant (Matthew J. Giacobbe, of counsel and on the briefs; Victoria A. Leblein, on the briefs).

Dezky, Hunter & DeFillippo, LLC, attorneys for respondent (Stephen B. Hunter, of counsel and on the brief).

Christine Lucarelli, General Counsel, attorney for respondent New Jersey Public Employment Relations Commission (Ramiro Perez, Deputy General Counsel, on the statement in lieu of brief).

PER CURIAM

Petitioner Ocean County College (OCC) appeals from the August 15, 2019 New Jersey Public Employment Commission (PERC) final decision denying reconsideration of a May 30, 2019 adjudication concluding that two provisions in a Collective Negotiations Agreement (CNA) were mandatorily negotiable. We affirm.

The dispute centers over language included in the prior CNA, effective from September 1, 2014, through August 31, 2019. OCC contends the clauses should be excluded. They are:

> Article III, Section J
> **Preference** – [Faculty Association of Ocean County College] Members shall be given preference to Faculty duties within their discipline, for which they are qualified.

Additionally, this paragraph is at issue:

2

> Article V, Section B (5) (in pertinent part)
> **Extra Pay Assignment Priority** -
> Full-Time Faculty Members shall have preference, according to qualifications, as determined by the Department Dean or Vice President of Academic Affairs, to teach courses involving extra pay.

Respondent Ocean County College Faculty Association (Association) represents full-time OCC faculty members.

In its initial decision on the merits, PERC observed that Article III, Section J "is phrased as a unit work preservation provision that Association faculty, if qualified (as determined by [OCC]), are given preference for faculty duties within their discipline over individuals not represented by the Association." As to Article V, Section B(5), PERC noted that it "is similarly [preconditioned] on the faculty being qualified for the duties at issue[.]" PERC concluded that since the disputed language allows OCC to initially determine which faculty within their discipline had the appropriate qualifications, there was no infringement on OCC's "managerial prerogative to make staffing assignments."

In the reconsideration decision, PERC did not consider those arguments OCC had not previously raised, which lacked supporting certifications based on

A-0446-19T2

personal knowledge. As they reiterated, "the clauses at issue are unit work preservation provisions because they provide preference to Association unit members over non-unit members."

Now on appeal, OCC raises the following issues for our consideration:

POINT I
THE COMMISSION'S CONCLUSION THAT THE PROVISIONS OF THE AGREEMENT WERE NEGOTIABLE AND DID NOT INFRINGE ON THE COLLEGE'S NON-NEGOTIABLE MANAGERIAL PREROGATIVE WAS ARBITRARY, CAPRICIOUS AND UNREASONABLE.

A. Well established case law.

B. Inclusion of Article III, Section J, in the Agreement Infringes on the College's Non-Negotiable Managerial Prerogative in Violation of the Well-Established Case Law and Legislative Policy.

C. Inclusion of Article V, Section B(5), in the Agreement Infringes on the College's Non-Negotiable Managerial Prerogative in Violation of the Well-Established Case Law and Legislative Policy.

POINT II
THE COMMISSION'S RECONSIDERATION DECISION, AFFIRMING ITS SCOPE DECISION, FINDING THAT THE PROVISIONS OF THE

4

AGREEMENT WERE NEGOTIABLE AND DID NOT INFRINGE ON THE COLLEGE'S NON-NEGOTIABLE MANAGERIAL PREROGATIVE WAS AGAINST THE SUBSTANTIAL EVIDENCE IN THE RECORD.

POINT III
THE COMMISSION'S CONCLUSION THAT THE PROVISIONS OF THE AGREEMENT WERE NEGOTIABLE AND DID NOT INFRINGE ON THE COLLEGE'S NON-NEGOTIABLE MANAGERIAL PREROGATIVE WAS ARBITRARY, CAPRICIOUS AND UNREASONABLE AS IT WAS INCONSISTENT WITH ITS MANDATE.

POINT IV
THE COMMISSION'S CONCLUSION THAT THE PROVISIONS OF THE AGREEMENT CONSTITUTED UNIT WORK PRESERVATION CLAUSES WAS ARBITRARY, CAPRICIOUS, UNREASONABLE AND CONTRARY TO PRIOR COMMISSION DECISIONS.

"The standard of review of a PERC decision concerning the scope of negotiations is 'thoroughly settled.'" City of Jersey v. Jersey City Police Officers Benevolent Ass'n, 154 N.J. 555, 568 (1998) (quoting In re Hunterdon Cnty. Bd. of Chosen Freeholders, 116 N.J. 322, 329 (1989)). PERC's decisions regarding negotiability are upheld unless "arbitrary, capricious or unreasonable, . . . lack[ing] fair support in the evidence," or in "violat[ion] of a legislative policy

expressed or implicit in the governing statute." Twp. of Franklin v. Franklin Twp. PBA Loc. 154, 424 N.J. Super. 369, 377 (App. Div. 2012) (quoting Commc'n Workers of Am., Loc. 1034 v. N.J. State Policemen's Benevolent Ass'n., Loc. 203, 412 N.J. Super. 286, 291 (App. Div. 2010)). The burden of establishing the improper nature of the agency action is upon the party challenging it. In re Adoption of Amends. to N.E. Upper Raritan, Sussex Cty., 435 N.J. Super. 571, 582 (App. Div. 2014).

In reviewing PERC decisions, our role is "sensitive and circumspect." Hunterdon Cty., 116 N.J. at 328. PERC's decisions are "regulatory determination[s] of an administrative agency that is invested by the legislature with broad authority and wide discretion in a highly specialized area of public life." Ibid. Substantial deference is therefore accorded to PERC's scope of negotiations determinations. Twp. of Franklin, 424 N.J. Super. at 377.

A three-part test is employed to determine when a subject is negotiable between public employers and employees: "(1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated

agreement would not significantly interfere with the determination of government policy." City of Jersey City, 154 N.J. at 568 (1998) (quoting In re Loc. 195 IFPTE, 88 N.J. 393, 404-05 (1982)). As to the third factor, "it is necessary to balance the interest of the public employees and the public employer. When the dominant concern is the government's managerial prerogative to determine policy, a subject may not be included in collective negotiations even though it may intimately affect employees' working conditions." Ibid. (quoting IFPTE, 88 N.J. at 404-05). The test is applied on a case-by-case basis. Troy v. Rutgers, 168 N.J. 354, 383 (2001).

The unit work rule prohibits the "shifting of work from employees within a negotiations unit to other employees outside the unit." City of Jersey City, 154 N.J. at 565. It "require[s] collective bargaining before workers in the bargaining unit are replaced by non-unit workers, the objective being to provide the union with at least an opportunity to negotiate an acceptable alternative[.]" Id. at 576. It protects the unit from loss of jobs and the consequent reduction in union membership. See Id. at 568-79. Having reviewed the record and applicable standards of review, we are satisfied that OCC has not shown that

PERC's decision was arbitrary, unreasonable, capricious or contrary to well-established precedent.

Article III, Section J simply seeks to protect Association members from outside instructors and staff who could perform the same duties. The very concerns implicated by the unit work rule are present here. Consequentially, the provision does not interfere with managerial authority; it states preference is to be given to faculty where such responsibilities fall "within their discipline, for which they are qualified." Thus, the clause preserved work traditionally performed by unit employees within their discipline while balancing OCC's interest in ensuring that appointments are made to those who are qualified to perform the job.

Similarly, Article V, Section B (5) does not interfere with OCC's ability to select the most qualified individual to teach a specific course. That section of the CNA accords extra pay assignment priority to full-time faculty members only where the Dean of Vice-President of academic affairs has determined that he or she is qualified. Again, managerial authority and prerogatives remain with OCC. Association members are given preference over non-members when both

are equally qualified. The language balances the need to preserve opportunities for Association members with OCC's need to determine which candidates are most qualified for extra pay opportunities.

Thus, PERC's decision finding the relevant paragraphs to be mandatorily negotiable does not interfere with the employer's managerial prerogative. It is neither arbitrary, capricious, nor unreasonable, and is in accord with the legislative mandate.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0446-19T2